

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Buford D. Battle
State Auditor
Austin, Texas

Dear Sir:

Opinion No. O-3547
Re: Whether rural aid moneys may
be given a school to pay Jeanes
supervising teacher.

We have your letter of May 15, 1941, reading as follows:

"In making application for aid from the Rural Aid Fund for 1940-1941, Tennessee Colony Common School District No. 21 of Anderson County listed the name of Sophia E. Montgomery as a colored teacher in that school. Upon investigation it was found that this person was in fact performing the duties of a Jeanes Supervising Teacher.

"The following statement pertaining to Jeanes Supervising Teachers is from the Thirty-first Biennial Report of the State Department of Education, 1938-1939 and 1939-1940, page 74:

"JEANES SUPERVISING TEACHERS
(Anna T. Jeanes Fund)

"The Southern Education Foundation at present is contributing from the Jeanes Fund, to the payment of the salaries of twenty-eight Jeanes Teachers in thirty counties in Texas. These teachers are not assigned to any particular school but they do demonstration teaching, supervisory and instructional work in all of the common schools of the county. The functions of these teachers are several fold. They work with the teachers and pupils of the several schools in an effort to make the school work more effective through improved methods of instruction, the acquisition of libraries, improvement in attendance, and a better adjustment of the curriculum to insure improvement in health and economic conditions among the Negro people of the communities. They also stimulate the organization and work of the Parent-Teacher Associations

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

and Jeanes Clubs for the purpose of improving the school houses, equipment, libraries and grounds. They work with the Women's Clubs in the canning and preserving of fruits, vegetables and meats, and in the making of plain clothes, quilts, mattresses, etc.

"In your opinion may or may not this school district claiming reimbursement upon a Jeanes Supervising Teacher be allowed such reimbursement from the Rural Aid fund in the same manner as would be allowed on a regular teacher?

"Your opinion is further requested as to whether or not the trustees of Tennessee Colony District No. 21 of Anderson County could legally contract to pay 100% of Sophia E. Montgomery's salary for performing the duties of a Jeanes Supervising Teacher."

If we were to assume the full correctness of the statement quoted by you from the Report of the State Department of Education we would be compelled to answer your first question in the negative, notwithstanding the fact of the Joint Legislative Advisory Committee's having sustained the position of the State Department of Education to the contrary as hereinafter appears.

The current Rural Aid Appropriation Bill, H. B. 933, 46th Legislature, sets out in detail the purposes for which the Rural Aid Fund may be expended and prescribes the showings which a school must make in order to receive aid therefrom. Nowhere in the Act is there any authority to use any of this fund for the purpose of paying a teacher who is "not assigned to any particular school" but who does "demonstration teaching, supervisory and instructional work in all of the common schools of the county." From Section 7 of this Act we quote:

"Salary Schedule. No part of the aid herein provided shall be used for increasing the monthly salary of any teacher, except as herein authorized, and funds provided for in this Act shall be used for the exclusive purpose of extending the length of the school term of the schools situated in the district receiving such aid on the basis of a schedule of teachers' salaries as determined by the State Board of Education for the school year 1938-39; * * * ."

In Section 13 we find the following:

"Application for Aid. The trustees of the schools authorized to apply for aid under the provisions of this Act shall send to the State Superintendent of Public Instruction on forms provided by said authority a list of the teachers employed in the schools showing the monthly salary, experience, and training of each, together with an itemized statement of budgeted receipts and expenditures, the length of term, and such other information as may be required, and the State Superintendent, under the direction of the Joint Legislative Advisory Committee may, subject to the provisions of this Act, grant to the school such an amount of this fund as will, with the State and County available funds, together with the local funds, maintain the school for a term not to exceed nine (9) months for classified or affiliated high schools and approximately eight (8) months for unaccredited high schools; provided that if the school has sufficient State and County available funds to maintain the school for an eight (8) month term according to the salary schedule adopted by the State Board of Education for the school year 1938-1939 or with its local maintenance tax, to maintain the desired length of term, not to exceed nine (9) months, as provided in Section 8, it shall not be eligible to receive aid; provided further, that the County Superintendent, subject to the approval of the State Superintendent of Public Instruction, shall approve all contracts with teachers, supervising officers, and bus drivers in all schools before such schools may be eligible to receive aid under any provisions of this Act. Provided, also, that all aid granted out of the funds herein provided shall be allotted only on the basis of need, based upon a proper budgeting of each district asking for any form of aid. The application shall be sworn to by the County Superintendent, president and secretary of the board of trustees of each of the schools applying for aid. All aid granted out of the funds provided shall be allotted only on the basis of need based upon an approved budget of each district asking for any form of aid, except as otherwise provided in this Act. * * * ."

We have noted the creation of the Joint Legislative Advisory Committee in Section 1 and the power given that Committee to adjust disputes. Sections 1, 12 and 17. But, no attempt was made to give such Committee the power - in settling disputes - to enlarge upon the purposes for which the money might be used. On the contrary, we find this provision in Section 12, viz:

"* * * Provided, however, that no regulation of the State Superintendent, State Board of Education or Joint Legislative Advisory Committee shall conflict with any provisions of this Act or any present statute. * * *."

The payment of the salary of a Jeanes teacher to serve in all the common schools of the county as outlined in the quoted statement from the Report would not be aiding the Tennessee Colony Common School District to extend the length of its school term.

However, it is noted that you merely quote from the Biennial Report of the Department of Education without advising us that the statements therein made are definitely true. We have before us the minutes of a meeting of the Joint Legislative Advisory Committee held on February 17, 1941. It therein appears that the Committee had before it a letter of appeal from State Superintendent Woods advising that the State Auditor had disapproved such use of the Jeanes teachers and was insisting upon the deletion of their salaries from the budget. In that letter we find this statement:

"This office has followed a policy for the last several years of permitting county superintendents and local school boards to select a negro, qualified to serve as what is known as a Jeanes teacher, who would be attached to and work some in a rural aid school and at the same time do some supervisory work in the other colored schools of the county. These teachers were not attached until the school was entitled to a teacher as provided in Section 4 of the law. As stated before, this has been approved by this office and by the State Auditor for several years."

The advisory Committee sustained the action of the Department of Education in paying these teachers. Mr. Woods' letter to the Committee would seem to indicate that such a teacher is attached to or employed by a particular school for actual teaching purposes in that school and that the supervisory work is additional. If this is the case the action of the Department of Education and Supervisory Committee may well have been proper. But, if the facts are as represented in the quoted statement from the Biennial Report and Sophia E. Montgomery's duties are the same with respect to the Tennessee Colony school as they are to the other schools and she is listed as a teacher in that particular school only for the purpose of enabling her to be paid out of the Rural Aid Fund, we would be compelled to answer your first question in the negative.

Thus our answer depends upon the facts as they actually exist. We trust the above will be of sufficient guide to you.

Without being definitely advised on the facts we prefer not to attempt to answer your second question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (Signed) GLENN R. LEWIS
Glenn R. Lewis
Assistant

GRL:ej

APPROVED MAY 29, 1941

(Signed) GROVER SELLERS
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
By BWB Chairman